Alena JECH, Adolf Befurt and Adrian Jebef, by his next friend, Alena Jech, Plaintiffs,

v.

Thomas A. BURCH and George A. Yuen, Defendants.

Civ. No. 77–0244.

United States District Court, D. Hawaii.

Feb. 21, 1979.

Alan Van Etten, Fong, Miho & Robinson, Honolulu, Hawaii, for plaintiffs.

Melvin M. Miyagi, Deputy Atty. Gen., Ronald Y. Amemiya, Atty. Gen., Honolulu, Hawaii, for defendants.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

### STATEMENT OF THE CASE

SAMUEL P. KING, Chief Judge.

On March 28, 1977, Alena Jech gave birth to a baby boy. She and her husband, Adolf Befurt, named the boy Adrian. Had they left it at that, there would be no case. They did not.

Instead of choosing either the father's surname ("Befurt") as required by H.R.S. § 574–2 (1976),[1] or one of the surnames allowed by an opinion of the State Attorney General[2] ("Befurt-Jech" or "Jech-Befurt"), Adrian's parents decided upon the fused surname "Jebef." The name "Adrian Jebef" was duly reported to the state's registrar of births as required by H.R.S. § 574–4 (1976).[3]

1. § 574–2 Legitimate children. All children born in wedlock shall have their father's name as a family name. They shall, besides, have a given name. All children legitimated, as provided in section 338–21, shall have either their father's name or their mother's name as a family name. They shall, besides, have a given name.

2. Exhibit P–1, letter dated April 25, 1977, to Mrs. Alena Jech, from Thomas A. Burch, reading in part: "In accordance with opinions from the Attorney General's office, we permit the mother's surname to be placed before or after the father's surname and separated by a hyphen."

3. § 574–4 Report to registrar of births. The father or mother of any child shall report the name or names of the child to the registrar of births for the district in which the child was born, within three months after the birth of the child.

By letter dated April 25, 1977, Thomas A. Burch, Chief of the Research and Statistics Office of the State Department of Health, wrote to "Mrs. Alena Jech," telling her that the listed surname for Adrian was not in accord with Hawaii State law. He stated that Adrian's birth certificate should be processed with the surname "Befurt," "Jech-Befurt," or "Befurt-Jech," and asked her to advise him which of these surnames she preferred. Mr. Burch also referred the new mother to the State law on change of names, and informed her that the birth certificate would be amended to show "Jebef" as the child's surname if a change of name decree was obtained from the Lieutenant Governor's office. This letter was ignored.

By letter dated June 2, 1977, Mr. Burch advised "Ms. Alena M. Jech" that, if no answer to the letter of April 25, 1977 was received by June 25, 1977, "we will change his surname to be the same as his father's surname." This letter was ignored.

There being no response to Mr. Burch's two letters, he altered the certificate submitted by the parents by crossing out the surname "Jebef" and inserting the surname "Befurt." A birth certificate was then issued under the name "Adrian Befurt."

To correct what they deemed to be an unconstitutional invasion of their rights in violation of 42 U.S.C. § 1983, Alena Jech, Adolf Befurt, and Adrian Jebef by his next friend Alena Jech, brought suit in this court on July 7, 1977, against Thomas A. Burch, Chief of the Research and Statistics Office of the Department of Health, State of Hawaii, and George A. L. Yuen, Director of Health, State of Hawaii.[4] Jurisdiction is invoked pursuant to 28 U.S.C. § 1343.

## THE HAWAII LAW ON NAMES

The basic statute in Hawaii on names was adopted in 1860.

■ Until 1975, it was required that every married woman shall adopt her husband's name as a "family name." H.R.S. § 574–1 (1968). This was changed in 1975 to allow a wife to retain her maiden name, or a husband to take his wife's surname, or either party to choose a hyphenated combination of both surnames, in either order. L.1975, ch. 114, § 1. The statute would seem to allow Mary Roe and John Doe after marriage to choose to be known (among other variations) as Mary Roe-Doe and John Doe-Roe, as there is no stated requirement that each party choose the same hyphenated surname. See H.R.S. § 574–1 (1976).[5]

Until 1967, it was required that all children born in wedlock shall have their father's name as a "family name" and "[besides] . . . a Christian name suitable to their sex." R.L.1955, § 327–2. In 1967, the words "Christian name suitable to their sex"[6] were deleted and the words "given name" substituted. L.1967, ch. 6, § 2. A further amendment was made in 1975 to accommodate a law adopting the Uniform Parentage Act. This added a sentence that "[a]ll children legitimated, as provided in [the law], shall have either their father's name or their mother's name as a family name." L.1975, ch. 66, § 3.

The statutory requirement that children born in wedlock shall have their father's name as a "family name" remains unchanged. H.R.S. § 574–2 (1976).[7] But in accordance with opinions from the State Attorney General, the registrar of births permits the original birth certificate to give as the child's surname a hyphenated combi-

---

4. The complaint named Does 1–10 as additional defendants. No specific individuals were ever identified.

5. § 574–1 Married persons. Upon marriage each of the parties to a marriage shall declare the surname each will use as a married person. The surname chosen may be the person's own, that of the person's spouse alone or that of the person's spouse placed before or after the person's own surname and separated by a hyphen.

6. There is no known case in which the requirements of "a Christian name" that was "suitable to their sex" were ever enforced. One wonders whether Grand Constable Anne de Montmorency, first owner of the Chateau de Chantilly, could have been so named had he been born in Hawaii between 1860 and 1967.

7. See note 1 supra.

nation of the parents' surnames, in either order.[8]

It is to be noted that this freedom of choice does not include the mother's surname alone. It is to be noted further that this same section permits the original birth certificate of a child born out of wedlock who is legitimated, to show either the father's surname or the mother's surname, if legitimation is accomplished before the original birth certificate is filed, but apparently not a hyphenated combination of surnames.

Consistently since 1860, illegitimate children who are not legitimated before the original birth certificate is filed are required to have their mother's surname as a "family name." H.R.S. § 574–3 (1976).[9] Changes in 1967 amended the requirement of a "Christian name suitable to their sex" to simply a "given name." L.1967, ch. 6, § 2.

The father or mother of a child is required to report the "name or names" of the child to the registrar of births for the district in which the child was born, within three months after the birth of the child. H.R.S. § 574–4 (1976).[10] It was pursuant to this requirement that the birth of "Adrian Jebef" was reported.

The final section of the Hawaii law relating to names provides a relatively simple procedure for changing a name. H.R.S. § 574–5 (1976).[11] The cost adds up to about $35. A change of name of someone whose birth is registered with the Hawaii Department of Health is noted on the original birth registration. A birth certificate issued thereafter would be amended accordingly.

The name-change law has been used as though it applied to any person living in Hawaii. The statute itself, however, only makes it unlawful to change "any name adopted or conferred under this chapter." Alena Jech and Adolf Befurt were born in Europe. Their names were neither adopted nor conferred by any statute of Hawaii. Presumably they could have changed their surnames to "Jebef" without going through the procedures set forth in H.R.S. § 574–5, registered the birth of "Adrian Jebef," and then changed their surnames back to "Jech" and "Befurt."

 I know of no general requirement of law in the absence of a statute that any special procedures must be followed to change one's name. The common law was, quite clearly, that one was free to call himself by whatever name he wished. *Secretary of Commonwealth v. City Clerk of Lowell, Mass.*, 366 N.E.2d 717 (Mass.1977). In any event, plaintiffs Jech and Befurt did not follow this procedure.

### THE OPERATIONS OF THE REGISTRAR OF BIRTHS

When life was simpler, registration certificates of children born in wedlock in Hawaii were indexed under the child's surname. This was invariably the father's surname.

Following the statutory changes of 1975, the Department of Health began indexing births under the father's surname. This is

---

8. *See* note 2 *supra*. If Mary Roe and John Doe married and had a son whom they named Joseph Roe-Doe, and Sally Smith and David Jones married and had a daughter whom they named Betty Smith-Jones, and Joseph Roe-Doe and Betty Smith-Jones married, could they choose the surname Roe-Doe-Smith-Jones? And if they had a child whom they wished to have the given name Ann, would the registrar of births accept the names Ann Roe-Doe-Smith-Jones? Mr. Burch testified that he was asking the legislature to amend the statutes to prevent this result.

9. § 574–3 Illegitimate children. All illegitimate children shall have their mother's name as a family name. They shall, besides, have a given name.

10. *See* note 3 *supra*.

11. § 574–5 How changed. It shall not be lawful to change any name adopted or conferred under this chapter, except (1) upon an order of the lieutenant governor . . ˙ . , or (2) by any court or judge of competent jurisdiction . . . [in connection with an adoption or a divorce] . . . . In all cases of change of name, except as otherwise provided, the order or decree shall be recorded in the bureau of conveyances. . . .

still the procedure, even though the child's surname may be a hyphenated combination of both parents' surnames. Thus, a son of Mary Roe and John Doe would be indexed under the surname Doe, even if his parents chose to give him the hyphenated surname Roe-Doe.

For reasons which have still not been explained satisfactorily to me, the department is completely defeated by the problem of indexing a child's surname, such as "Jebef," which does not belong to either of the parents. Present procedures would accommodate indexing the name "Jebef-Befurt" or "Befurt-Jebef," as the registrar would index the child's birth under the father's name in either case, ignoring the other half of the hyphenated surname. Assuming that administrative convenience dictates a continuation of a male-oriented indexing system, the registrar did not make clear to me why there could not be a cross-reference from "Adrian Jebef" to "Adolf Befurt."

## WHY THE PARTIES ARE AT ODDS

One would have thought that this controversy could have been settled long before it escalated into a Constitutional crisis. A simple bureaucratic accommodation in this one instance could have been made in a few minutes. A tentative opinion by the State attorney general that there was enough confusion in the Hawaii statutes to justify acceptance of the report as filed would not have bound the State to any substantial outlay of public monies while we waited to see whether this kind of registration would grow into a significant problem.

On the other hand, for less than $35, the plaintiffs could have, and still may, change Mr. Burch's change back to the original "Jebef."

Why then are the parties so set on confrontation?

I confess that I understand plaintiffs' obduracy more easily than defendants' inflexibility. Defendants say it has to be the way they say because the statutes of Hawaii so require. Plaintiffs say that they gave the naming of their child a great deal of thought and agreed on the name "Jebef" for a variety of emotional, cultural, and experiential reasons in which they believe very strongly, and that government should not be allowed to interfere with their personal decision in naming their own child absent some overriding state interest.

## THE CONSTITUTIONAL ISSUE

The first question is whether we are dealing with a problem that has any Constitutional dimensions whatsoever. Does the Federal Constitution concern itself with the procedures whereby a child is named at birth?

If plaintiffs have any Constitutional right to complain of defendants' actions, they must derive that right from broader Constitutional Rights of Privacy.[12] Is there any basis for such a derivation?

The term "privacy" connotes a variety of related interests, all of which are at odds with the social controls over individuals by a technological society, epitomized by its vast systems of personal records. Privacy is the value in our society that challenges and balances social engineering. Taken as a claim of the individual citizen against the government, it is, simply, a "right to be let alone," or a right to exercise "control over information about oneself."

Although a right of privacy is nowhere expressly contained in the Constitution, personal autonomy and freedom from governmental intrusion are values deeply rooted in American constitutional history. Since at least the fifteenth century, the term "privacy" has been used in the Eng-

12. At the recent November 1978 general elections, the people of Hawaii adopted several amendments to the Constitution of the State of Hawaii, one of which added a new section to the Bill of Rights to read as follows:

RIGHT TO PRIVACY
Section 6. The right of the people to privacy is recognized and shall not be infringed without the showing of a compelling state interest. The legislature shall take affirmative steps to implement this right.

lish language to mean "the state or condition of being withdrawn from the society of others, or from the public interest." By the time of the American Constitutional Convention at the end of the eighteenth century, privacy had come to represent a broad spectrum of interests which found protection in several provisions of the Bill of Rights. . . .

. . . [T]o the extent that historic or novel privacy interests may not be sufficiently protected by the First, Fourth, Fifth, and Fourteenth Amendments, it has sometimes been suggested that they are safeguarded by the Ninth Amendment. . . .

J. Shattuck, Rights of Privacy xiii–xiv (1977).

■ In my opinion, a proper interpretation of Anglo-American political and legal history and precedent leads to the conclusion that parents have a common law right to give their child any name they wish, and that the Fourteenth Amendment protects this right from arbitrary state action.

Plaintiffs have pointed out that no reported case has as yet dealt with this precise constitutional issue. I agree with them, however, that the involvement of the Fourteenth Amendment follows from cases such as *Cleveland Board of Education v. La Fleur*, 414 U.S. 632, 94 S.Ct. 791, 39 L.Ed.2d 52 (1974); *Roe v. Wade*, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973); *Griswold v. Connecticut*, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965); *Meyer v. Nebraska*, 262 U.S. 390, 43 S.Ct. 625, 67 L.Ed. 1042 (1923); and *Secretary of Commonwealth v. City Clerk of Lowell, Mass.*, 366 N.E.2d 717 (Mass.1977); see *Smith v. Organization of Foster Families*, 431 U.S. 816, 842, 97 S.Ct. 2094, 53 L.Ed.2d 14 (1977).

The common experience of mankind, whether parents, agonizing over a name for their newborn child, or grandparents trying to participate in the naming process, or grown children living with the names their parents gave them, points up the universal importance to each individual of his own very personal label. Every society has developed a special folklore around a person's name. One's name becomes a symbol for one's self.[13]

Good name in man and woman, dear my lord,

Is the immediate jewel of their souls;

Who steals my purse steals trash; 'tis something, nothing;

'Twas mine, 'tis his, and has been slave to thousands;

But he that filches from me my good name

Robs me of that which not enriches him,

And makes me poor indeed.

W. Shakespeare, Othello Act III, Sc. 3, Line 155 (1604).

The "Blessings of Liberty" mentioned in the preamble to the Constitution include time honored rights, amenities, privileges, and immunities, among which is autonomous control over the development and expression of one's intellect, interests, tastes, and personality. *See Doe v. Bolton*, 410 U.S. 179, 93 S.Ct. 739, 35 L.Ed.2d 201 (1973) (concurring opinion of Douglas, J., at 210–211, 93 S.Ct. 739). The naming of one's own child comes within this catalogue of blessings of liberty.

### THE STATE INTEREST

Having found a Constitutionally protected right, we turn next to the question of whether the State may impinge upon this right, and, if so, to what extent.

The tests for permissible state actions which impinge upon Constitutionally protected rights impose varying degrees of justification, from no acceptable justification whatsoever at one extreme to a reasonable relation to some state purpose at the other extreme. The plaintiffs contend only for the least burdensome requirement on the

---

13. Cf. *Roe v. Conn*, 417 F.Supp. 769, 782 (M.D. Ala.1976) ("Surnames give an individual a personal identity and self-awareness.")

state, at least at this stage in the development of the law of privacy in this area.[14]

I agree that the extent of the Constitutional protection to be applied here is as expressed by Mr. Justice McReynolds in *Meyer v. Nebraska, supra*, 262 U.S. at 399–400, 43 S.Ct. at 627, in striking down a state law which barred the teaching of foreign languages in private or public elementary schools within Nebraska. He wrote:

> The established doctrine is that this liberty may not be interfered with, under the guise of protecting the public interest, by legislative action which is arbitrary or without reasonable relation to some purpose within the competency of the State to effect.

■ What is the state interest in refusing to allow parents to give their child at birth a name which they may immediately confer by way of change of name? I fail to see any such interest.

■ We are not dealing with the statutory requirement that the birth of a child in Hawaii be reported to the State Department of Health. H.R.S. § 338–5 (1976) (compulsory registration of births), H.R.S. § 338–6(a) (1976) (local agent to prepare birth certificate). The public interest in the fact of a birth clearly overrides anyone's desire not to report this information.

We are also not dealing with the indexing system of the registrar of births. If the registrar wants to register the birth certificate of "Adrian Jebef" under "Adrian Befurt," or any other name or symbol, that is a matter for regulation as an internal administrative decision of the State Department of Health.

We are further not dealing with the requirement on the reporting form that the current names of both parents be listed.

The offending statute is H.R.S. § 574–2 (1976)[15] which requires that "[a]ll children born in wedlock shall have their father's name as a family name." And the protested action is the refusal of the registrar of births to issue a birth certificate that does not give the father's name (or a hyphenated name made up of both parents' surnames) as the child's name at birth.

The State argues that it is necessary to name and register children as presently done in order to trace relationships for purposes of determining devolution of property and title to lands. There may have been a day when this argument had some validity. Today it is ludicrous. A person does not have to be born in Hawaii to inherit property in Hawaii or from a citizen of Hawaii. Nor does the present indexing system recover the names of all of one's heirs who are born in Hawaii.

If Mary Roe and John Doe marry outside of Hawaii but retain their own names, then move to Hawaii and have a son named Joseph Doe, and John Doe predeceases Mary Roe, the Hawaii registrar of births cannot recover the information that Mary Roe had a son Joseph Doe unless the searcher has independent knowledge of Mary Roe's family history. Thus, in this situation, Joseph Doe could just as well be named "Adrian Jebef." If one knows a child's name, the parents' names, and the date of birth—the information usually requested of an applicant for a birth certificate—the certificate can be recovered, again regardless of the child's surname.

The State suggests that to allow plaintiffs to prevail involves the expenditure of substantial public funds. There is no evidence to support this suggestion.

The statutory provision for change of name is not a substitute for the right to insist that one's child *at birth* was given the *original name* designated. This merely restates the first proposition that the naming of a child is protected against arbitrary or unreasonable state action.

## JURISDICTION

■ Usually jurisdictional determinations come before a discussion of the merits of the case. Plaintiffs invoke this court's

---

**14.** *But see* Hawaii Const. art. I, § 6 (1978) (quoted in note 12 *supra*).

**15.** *See* note 1 *supra*.

jurisdiction under 42 U.S.C. § 1983 and 28 U.S.C. § 1343. Section 1343 confers original jurisdiction on this court of an action brought to redress the deprivation, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, of any rights, privileges, or immunities secured by the Constitution and laws of the United States as prohibited by section 1983. Thus the jurisdictional argument becomes circular. If I find a right, privilege, or immunity within the purview of Section 1983, this court has jurisdiction under section 1343. If I do not find anything covered by section 1983, this court has no jurisdiction under 1343. Having earlier concluded that plaintiffs do assert a right, privilege, or immunity secured by the Constitution, I also conclude that jurisdiction lies to grant the requested relief.

The State cites *Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974) for the proposition that this court cannot order a state official to undo an act previously done in his official capacity. More specifically, the State argues that "a federal court's remedial power [under section 1983], consistent with the Eleventh Amendment, is necessarily limited to prospective injunctive relief." [16]

Assuming that *Edelman* is still the latest authority in this regard,[17] I can fashion a remedy which is only prospective in nature, for example, enjoining defendants from issuing a birth certificate which shows "Befurt" instead of "Jebef" as the child's surname.[18]

## CONCLUSION

■ Plaintiffs have a Constitutionally protected right to give their own child any surname they choose.

■ The refusal of the registrar of births to accept the surname "Jebef" as the child's surname is a deprivation under color of state law of a right secured by the Constitution of the United States.

■ Defendants have failed to show any reasonable relation to some purpose, within the competency of the State to effect, why this right should be curtailed.

■ To the extent that H.R.S. § 574-2 (1976) prohibits the exercise of this right, the statute is unconstitutional.

Plaintiffs are entitled to declaratory and injunctive relief to the end that any birth certificate issued by the registrar of births for plaintiff child shall show that his name as reported pursuant to H.R.S. § 574-4 (1976) was "Adrian Jebef."

The foregoing shall constitute the findings of fact and conclusions of law required by Fed.R.Civ.P. 52.

Counsel for the parties shall attempt to agree upon an appropriate form of judgment consistent herewith for submission to the court within 10 days or such further time as may be requested and allowed, or, if unable to agree, shall within the time set submit their separate suggested forms of judgment.

**16.** *Edelman v. Jordan*, 415 U.S. 651, 677, 94 S.Ct. 1347, 1362, 39 L.Ed.2d 662 (1974).

**17.** *Cf. Hutto v. Finney,* 437 U.S. 678, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1978) (stating that it is at least an open question whether section 1983 properly construed does not make the State liable for relief of all kinds, notwithstanding the Eleventh Amendment). *But see Alabama v.*

*Pugh,* 438 U.S. 781, 98 S.Ct. 3057, 57 L.Ed.2d 1114 (1978).

**18.** Plaintiffs originally included in their complaint a prayer for damages. They voluntarily withdrew this part of their complaint. A prayer for costs and attorney's fees remains unresolved.