Paul K. Halverson, DrPH, MHSA State Health Officer and Director Division of Health Arkansas Department of Health and Human Services Post Office Box 1437, Slot H39 Little Rock, AR 72203-1437
Dear Dr. Halverson:
I am writing in response to your request for my opinion on a question arising from the following reported facts:
 In the 1970's and 1980's, several court cases (O'Brien v. Tilson, 523 F.Supp. 494 (E.D.N.C. 1981); Sydney v. Pingree, 564 F.Supp. 412 (S.D. Fla. 1982); and Jech v. Burch, 466 F.Supp. 714 (D. Hawaii 1979)) ruled that parents have a constitutionally protected right to choose the name of their child. As a result, language in Arkansas Rules and Regulations pertaining to Vital Records 4.0(e) was stricken. Ark. Code Ann. § 20-18-40 [sic: "-401"] outlines current Arkansas law regarding the ability of parents to choose the surname their children will be given. For married parents and parents who complete an affidavit of paternity, Ark. Code Ann. § 20-18-401(f)(1) states that "the parents may give the child any surname they choose."
 However, Ark. Code Ann. § 20-18-401(f)(2) states that "[i]f the mother was not married at the time of either conception or birth or between conception and birth, the name of the father shall not be entered on the certificate of birth without an affidavit of paternity signed by the mother and the person to be named as the father." It then goes on to state that the "parents may give the child any surname they choose." The reference to "parents" in this section could be read to mean that only the two parents acting together can choose the surname of their child. This has led to confusion about the ability of an unmarried mother to give her child a surname that is different from her own. The confusion is compounded by the language of Ark. Code Ann. § 20-18-401(f)(4), which states that if the father is not named on the certificate of birth, no other information about the father shall be entered on the birth certificate. Health care facilities are concerned that allowing an unmarried mother to give her child a surname different from her own could be a violation of Ark. Code Ann. § 20-18-401(f)(4).
Against this backdrop, you have posed the following question:
 If an unmarried mother and the baby's putative father do not complete affidavits of paternity, can the mother give her child any surname she chooses?
RESPONSE
In my opinion, the answer to this question is a qualified "yes." Subsection 20-18-401(f)(2) of the Code (Repl. 2005) affords the "parents," which you note is a plural designation, of a child born to an unwed mother the right to "give the child any surname they choose" when the parents have both executed an affidavit of paternity and the father is consequently named on the birth certificate. Once paternity has been established either by affidavit or judicial declaration — the latter of which course also triggers an obligation to list the father on the birth certificate, A.C.A. § 20-18-401(f)(3) — the acknowledged father has an equal voice in choosing a surname, rendering any disagreement between the parents subject to judicial resolution. Subsection (f)(4) of this statute provides: "If the father is not named on the certificate of birth, no other information about the father shall be entered on the certificate." While hardly a model of clarity, A.C.A. § 20-18-401(f) should not, in my opinion, be read as denying the mother a qualified right to choose any surname she wishes for the child, including her own, the father's or any other, if the father's name does not appear on the birth certificate. However, because that right is qualified, I believe her choice of surname might be subject to a later challenge in a legal proceeding between the parties.
With respect to the application of A.C.A. § 20-18-401(f)(4), I do not consider the mere fact that a birth certificate lists as a child's surname the unacknowledged natural father's surname would in and of itself necessarily amount to divulging "information about the father" in derogation of the statute. If the statute were read as precluding an unwed mother from giving her child the unacknowledged father's surname, I believe it might be subject to constitutional attack. As regards your specific concern that the statute might preclude health officials from listing an unacknowledged father's surname as the child's, I do not believe the legislature intended to charge health officials recording births with making ad hoc paternity determinations as a basis for deciding whether to record a mother's chosen surname for her child. Accordingly, although the statute is unclear on the matter, I believe health officials might reasonably record whatever surname the unwed mother chooses, leaving open the possibility of a subsequent legal challenge from any interested party.
Subsection 20-18-401(f) of the Arkansas Code (Repl. 2005) provides:
 (1) If the mother was married at the time of either conception or birth, or between conception and birth, the name of the husband shall be entered on the certificate as the father of the child, unless:
 (A) Paternity has been determined otherwise by a court of competent jurisdiction; or
 (B) The mother executes an affidavit attesting that the husband is not the father and that the putative father is the father, and the putative father executes an affidavit attesting that he is the father and the husband executes an affidavit attesting that he is not the father. Affidavits may be joint or individual or a combination thereof, and each signature shall be individually notarized. In such event, the putative father shall be shown as the father on the certificate and the parents may give the child any surname they choose.
 (2) If the mother was not married at the time of either conception or birth or between conception and birth, the name of the father shall not be entered on the certificate of birth without an affidavit of paternity signed by the mother and the person to be named as the father. The parents may give the child any surname they choose.
 (3) In any case in which paternity of a child is determined by a court of competent jurisdiction, the name of the father and surname of the child shall be entered on the certificate of birth in accordance with the finding and order of the court.
 (4) If the father is not named on the certificate of birth, no other information about the father shall be entered on the certificate.
(Emphases added.)
Based upon your prefatory comments, I gather that your single question actually reflects several concerns regarding this statute: first, given your stated concern that possibly "only the two parents acting together can choose the surname of their child," whether the use of the plural term "parents" in A.C.A. §20-18-401(f)(2) means that an unwed mother is totally precluded from giving the child a surname without the father's consent even if the father has not executed an affidavit of paternity or a court has not declared paternity; secondly, assuming that under the particular circumstances the unwed mother by herself may give the child a surname, whether the unwed mother may select a surname other than her own; and thirdly, assuming that under the particular circumstances the unwed mother by herself may give the child either her own or another surname, whether she is nevertheless precluded by operation of A.C.A. § 20-18-401(f)(4) from giving the child its unacknowledged father's surname.
With respect to the first of these concerns, I believe an unwed mother alone may clearly give the child her own surname if the father is not identified on the birth certificate. To suggest otherwise would be to raise the absurd possibility that no one could provide a surname for the child of an unwed mother who had failed to obtain an official acknowledgment of paternity from the father. I note in this regard that neither the Code nor any provision in the Arkansas Rules and Regulations Pertaining to Vital Records contains any directive that the birth certificate of a child born to an unwed mother automatically list the child's surname as being the same as the mother's if the father has not acknowledged paternity.[1] Providing the child the mother's own surname would thus clearly appear to be the mother's prerogative — a proposition so inevitable that I have found no statutory or case law addressing it one way or the other.
With respect to the possibility that the statute's use of the plural "parents" might restrict that prerogative, the Arkansas courts have long held that in interpreting statutory language, it is inappropriate to give the statute a reading that would result in an absurdity, or to presume that the legislature enacted a vain and meaningless law. See Yarbrough v. Witty, 336 Ark. 479,484, 987 S.W.2d 257(1999); Lawhon Farm Servs. v. Brown,335 Ark. 272, 948 S.W.2d 1 (1998); Citizens To Establish A ReformParty v. Priest, 325 Ark. 257, 926 S.W.2d 432 (1996); Henson v.Fleet Mortgage Co., 319 Ark. 491, 892 S.W.2d 250 (1995); Neelyv. State, 317 Ark. 312, 877 S.W.2d 589 (1994); Death and TotalPermanent Disability Trust Fund v. Whirlpool Corp.,39 Ark. App. 62, 837 S.W.2d 293 (1992). The court has further held that in determining legislative intent in order to construe an act, the reason and spirit of the act should take precedence over the letter of the act, where adherence to the letter of the act would result in an absurdity or would defeat the plain purpose of the law. Williams v. City of Pine Bluff, 284 Ark. 551,683 S.W.2d 923 (1985).
Applying these principles, I believe the final sentence of A.C.A. § 20-18-601(f)(2) must be read as applicable only when both parents have executed the affidavit of paternity referenced in the preceding sentence. I am reinforced in this conclusion by the fact that the phrase "[t]he parents may give the child any surname they choose" tracks verbatim the phrase used in A.C.A. §20-18-401(f)(1)(B), which accords this right whenever a husband, a wife and a putative father all attest that the wife and the putative father are the child's actual parents.[2] I consider this statute significant in that it uses the phrase at issue to apply only to the "parents" who have executed an affidavit of paternity. In my opinion, the purpose of the final sentence of this statute is only to resolve any question as to whether the child in a situation where the father's name appears on the birth certificate must bear the surname of either the father or the mother. The statute makes clear that the parents may by agreement give the child any surname they choose, including one other than either of their own surnames.
Although the Code never directly says that an unwed mother might at the very least give her child her own surname when the father is not listed on the birth certificate, the legislature may well have deemed this conclusion too obvious to warrant codifying. Indeed, based upon your factual recitation, I gather that the State Registrar of Vital Records is not so much concerned whether the mother might elect to give her child her surname when the father's name does not appear on the birth certificate, but rather whether the mother might herself choose some surname for the child other than her own, including in particular the unacknowledged father's surname. In any event, the case law is replete with instances in which a natural father has sued to change the surname of a child born out of wedlock from the mother's maiden name to the surname of the father. See, e.g.,Huffman v. Fisher, 337 Ark. 58, 66-69, 987 S.W.2d 269 (1999) and cases discussed therein.[3] These cases illustrate what I consider the obvious fact that an unwed mother with no one's permission may give her child her own surname when the father is not acknowledged on the birth certificate. Having ventured this opinion, I will add that the use of the plural "parents" in the statute might reasonably prompt the question you have posed and that the statute would benefit from legislative clarification.
No Arkansas statute directly addresses the second consideration raised by your question — namely, whether in an instance where a birth certificate does not name the father and no court of competent jurisdiction has established paternity, the unwed mother may independently choose for her child any surname other than her own. However, applying the principles of statutory construction set forth above, subject to various possible later challenges discussed below, I believe that the legislature clearly did not intend to authorize natural parents who are acknowledged on a child's birth certificate to give that child any surname they choose while denying that right to an unwed mother who is the sole acknowledged parent of her child. I believe it would be reasonable for health officials charged with the task of entering or recording the surname of an unwed mother's child where the father is not acknowledged on the birth certificate to assume that the mother has this right and to record the mother's choice of surname accordingly.
In my opinion, in enacting A.C.A. § 20-18-401(f)(2), the legislature intended only to declare that when the father of an illegitimate child acknowledges his paternity and is recognized on the birth certificate, he may participate with the mother in giving the child any surname upon which the two parents agree. The statute is silent on the separate question of whether an unwed mother has the right to give her child any surname she chooses if the father is unacknowledged. Notwithstanding this silence, I believe various constitutional mandates support concluding that an unwed mother has the discretion independently to name her child if the birth certificate does not identify the father.
The first of these mandates is contained in the equal protection provisions of the United States and Arkansas Constitutions, U.S. Const. amend. 14 and Ark. Const. art. 2, §§ 2 and 3. The equal protection doctrine prohibits certain types of "classifications" that result in the disparate treatment of those who are similarly situated. Classifications in and of themselves do not violate the equal protection doctrine. In order to establish an equal protection violation arising out of a classification that does not affect a suspect class or a fundamental right, it is necessary to show that the disparity is arbitrary — that is, that the disparity has no conceivable rational basis or rational relation to a legitimate governmental end. Vacco v. Quill,521 U.S. 793 (1997); Romer v. Evans, 517 U.S. 620, 631 (1996);Clements v. Fashing, 457 U.S. 957 (1982); Craft v. City ofFort Smith, 335 Ark. 417, 984 S.W.2d 22 (1998); Medlock v.Leathers, 311 Ark. 175, 842 S.W.2d 428 (1992), reh. denied, 1993; McCambridge v. City of Little Rock, 298 Ark. 219,766 S.W.2d 909 (1989); Streight v. Ragland, 280 Ark. 206,655 S.W.2d 459 (1983); City of Piggott v. Woodard, 261 Ark. 406,549 S.W.2d 278 (1977). In reviewing the constitutionality of a classification that does not affect a suspect class or a fundamental right, the courts must not only presume the constitutionality of the challenged classification; they must also uphold the classification even without requiring a showing of an actual rational basis, so long as any conceivable rational basis for the scheme can be adduced — even a hypothetical one.Ester v. National Home Ctrs., Inc., 335 Ark. 356,981 S.W.2d 91(1998); Reed v. Glover, 319 Ark. 16, 889 S.W.2d 729 (1994);Arkansas Hospital Assoc. v. State Board of Pharmacy,297 Ark. 454, 763 S.W.2d 73 (1989).
If one were to read the term "parents" globally in the last sentence of A.C.A. § 20-18-401(f)(2) — that is, as applying to all "parents" regardless of circumstances, rather than only to the "parents" acknowledged on the birth certificate — the statute would result in the disparate treatment of, on the one hand, unwed mothers whose children's birth certificates acknowledge the fathers and, on the other hand, unwed mothers whose children's birth certificates do not. In my opinion, these two categories of unwed mothers are "similarly situated," meaning that they can be treated differently only of a rational basis exists to do so.
In considering whether any such rational basis exists, I am struck by the fact that unacknowledged fathers have traditionally had little success in the court when they themselves have brought equal protection challenges attempting to assert some purported parental right, including naming the child. It appears consistent with existing case law that the mother of an out-of-wedlock child whose father is unacknowledged and hence legally unaccountable for the child's care should be considered the sole "parent" of the child for purposes of determining legal rights and obligations. This conclusion also appears consistent with the widely accepted definition of the "parent and child" relationship as "the legal relationship existing between a child and his natural or adoptive parents incident to which the law confers or imposes rights, privileges, duties, and obligations." Uniform Parentage Act § 1 (1973). Although this definition has not been adopted as Arkansas law, I think it is accurate in suggesting that a father who has not acknowledged himself as such and whom the state has not recognized as such should not be recognized as a "parent" for purposes of selecting his out-of-wedlock child's surname.
At issue from an equal protection perspective is whether, for purposes of determining the range of potential surnames available to an out-of-wedlock child, any conceivable rational basis exists to distinguish between, on the one hand, two acknowledged parents and, on the other, the unwed mother of a child whose father is unacknowledged.[4] Despite the liberality of this rational-basis standard in upholding governmental classifications, it seems questionable whether A.C.A. §20-18-401(f)(2) would withstand an equal protection challenge if it were read as restricting the right of the unwed mother of a child whose father is unacknowledged to give her child any surname she chooses. In my opinion, although these issues are not entirely free from doubt, a reviewing court might reasonably conclude that it offends the equal protection doctrine to allow an unwed mother to give her child any surname she chooses so long as an acknowledged father concurs while denying her the right to do so independently if the father is unacknowledged. The courts have tended to accord rights to unwed fathers in proportion to their degree of responsibility in raising their children. Thornton summarized this principle by stating that "[u]ntil a man can actually establish that he is the father of a child he should not be entitled to exercise parental rights with reference to the child." Thornton, supra at 313 n. 45.[5]
With respect to the constitutional issues I have been discussing, you have expressly asked about the applicability of three cases —Sydney v. Pingree, 564 F. Supp. 412 (S.D. Fla. 1982); O'Brienv. Tilson, 523 F. Supp. 494 (E.D.N.C. 1981); and Jech v.Burch, 466 F. Supp. 714 (D.C. Hawaii 1979). In Jech, a United States district court struck down as unconstitutional a Hawaiian statute mandating that all children born in wedlock bear the father's surname. In support of its holding, the court reasoned:
 . . . [A] proper interpretation of Anglo-American political and legal history and precedent leads to the conclusion that parents have a common law right to give their child any name they wish, and that the Fourteenth Amendment protects this right from arbitrary state action.
466 F. Supp. at 719. The court further suggested that this right implicates the parents' constitutional liberty interests and their right of privacy. Id. at 718-19. The court concluded that the state's restriction of these rights could not withstand a rational basis analysis. Id. at 721.
In Tilson, another district court, invoking Jech, struck down a substantially identical North Carolina statute in the face of a challenge by a married couple who, in accordance with Swedish custom, wished to give their son a surname consisting of the father's given name combined with the suffix "son."523 F. Supp. at 495. The court concluded that the statute in question violated the constitutional guarantee of privacy and created an impermissible classification based on gender inasmuch as the statute permitted the child to bear the father's name but not the mother's. Id. at 496. Acknowledging that the gender issue might trigger a higher level of scrutiny, the court nevertheless concluded that the statute must be stricken even under a rational-basis analysis. Id.
In Sydney, yet another district court, again invoking Jech,
struck down a materially identical Florida statute in the face of a challenge by a married couple who wished to give their son a surname consisting of a combination of portions of their own surnames. The court offered the following analysis in support of its holding:
 Following the reasoning of the United States Supreme Court in Roe v. Wade, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973), this court concludes that the due process clause of the Fourteenth Amendment protects the plaintiffs' right to choose the name of their child from arbitrary state action.
 The Court's decision in Roe v. Wade and other privacy cases, e.g., Griswold v. Connecticut, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965); Loving v. Virginia, 388 U.S. 1, 87 S.Ct. 1817, 18 L.Ed.2d 1010 (1967), hold that the liberty component of the due process clause of the Fourteenth Amendment encompasses a freedom of choice in certain matters of marriage and procreation. See Florida Women's Medical Clinic, Inc. et al., v. Jim Smith, et al., 536 F.Supp. 1048, at 1052-1053 (S.D.Fla. 1982). This constitutional right of liberty and privacy is broad enough to include the right of parents to choose a name for their child. . . .
564 F. Supp. at 413.
Although the factual scenarios and the legislation at issue in these cases differ from those at issue here — primarily in that the courts were faced with the issue of whether a married couple could be restricted choosing a surname for their child, not whether the unmarried mother of an out-of-wedlock child could be thus restricted if the father is unacknowledged — I believe the principles upon which these cases turn might likewise apply to any Arkansas legislation that could be read as restricting an unwed mother's right under those circumstances to select her child's surname. However, having offered this general opinion, I will again state that I believe it would be wrong to read A.C.A. § 20-18-401(f)(2) in particular as containing any such proscription. It is well established that if it is possible to construe a statute as constitutional, one must do so. Bunch v.State, 344 Ark. 730, 736, 43 S.W.3d 132 (2001); Jones v.State, 333 Ark. 208, 969 S.W.2d 618 (1998). Under the construction of the statute I have offered above, which strikes me as quite plausible, I believe a reviewing court would not consider the statute constitutionally offensive.
I must further address your report that "[h]ealth care facilities are concerned that allowing an unmarried mother to give her child a surname different from her own could be a violation of Ark. Code Ann. § 20-18-401(f)(4)." Although I can understand the basis for that concern, on balance I do not believe it is warranted. As noted above, A.C.A. § 20-18-401(f)(4) provides that "[i]f the father is not named on the certificate of birth, no other information about the father shall be entered on the certificate." At issue, then, is whether giving a child an unacknowledged father's surname might be characterized as providing "other information about the father." This question is frankly problematic. In most instances, so long as the natural father of a child is not identified as such on the birth certificate, the mere fact that a child has the father's surname would not in itself betray the father's paternity. However, I can envision certain circumstances, as when a father's name is unusual or a small community has only one such surname, under which giving the child an unacknowledged father's surname might enable someone at least to speculate about the father's identity. Nevertheless, I do not believe that the legislature intended the officials who record the surnames of newborns to undertake a factual inquiry into the question of whether a child's chosen surname might betray some information about an unacknowledged father. Rather, I believe the statute prohibits including on a birth certificate only direct information concerning the unacknowledged father, such as his social security number, occupation or address.
I am reinforced in this reading of the statute by the fact that I am obliged, if at all possible, to read A.C.A. § 20-18-401(f)(4) as constitutional, Bunch, supra — a principle that inclines me, for reasons explained above, to interpret the phrase "other information about the father" as excluding the mere assignment, without commentary of any sort, of the father's surname to the child. Accordingly, I believe an official charged with recording a newborn's surname should list whatever name is chosen by the parents or mother without inquiring whether the surname might indirectly reveal an unacknowledged father's identity. To be sure, a disaffected unacknowledged father might, after the mother has named her child, challenge her selection of the patronym as offending A.C.A. § 20-18-401(f)(4).[6] However, I do not believe any such challenge would implicate the officials who recorded the newborn's name.
Finally, I should explain that an unwed mother's right to name her child whatever she chooses when the father is unacknowledged is "qualified" only to the extent that her choice of surname is subject to challenge after the fact. For instance, an unacknowledged father might seek a judicial determination of paternity, triggering the listing of his name on the birth certificate, and challenge the mother's choice of a surname in that proceeding.[7] In that instance, he would have equal standing to select a surname for the child and the court would resolve the dispute by determining what would best serve the child's interests. Moreover, although the Arkansas courts have not found occasion to address the issue, logic suggests that even an individual not acknowledged as the father would have standing to challenge an unwed mother's choice of her child's name, including the surname, if the name misleadingly implies his paternity.[8]
Assistant Attorney General Jack Druff prepared the foregoing opinion, which I hereby approve.
Sincerely,
MIKE BEEBE
Attorney General
MB/JHD:cyh
[1] As originally enacted, A.C.A. § 20-18-401 contained a provision directing that a child bear the mother's surname if she was unmarried and the father had not acknowledged his paternity. Acts 1981, No. 120, § 7(e)(4). Subsection 7(e)(2) of this legislation provided that the child would bear thefather's surname if the father acknowledged his paternity. Both of these rules were later omitted pursuant to Acts 1989, No. 396, § 2(e)(2). See Reaves v. Herman, 309 Ark. 370, 372,830 S.W. 2d 860 (1992) (noting this change and faulting the trial court for applying the pre-amendment provision regarding the patronym). The most recent amendment to this legislation added the following sentence to this subsection: "The parents may give the child any surname they choose." Acts 1995, No. 154, § 16. This legislative history appears to reflect a recognition that the General Assembly should not — and, indeed, very possibly may not for constitutional reasons, see discussion infra — restrict the right of parents to give a child any surname they wish. See
Richard H. Thornton, Note, The Controversy Over Children'sSurnames: Familial Autonomy, Equal Protection and the Child'sBest Interests, 2 Utah L. Rev. 303, 309 (1979) (citing Craig v.Boren, 429 U.S. 190, 197-98 (1976) and Laks v. Laks,540 P.2d 1277, 1280 (Ariz.App. 1975), in support of the proposition that "if a state accords the husband a right to have children bear his surname but does not account for the similar interest of a mother, the procedure may violate the equal protection clause of the fourteenth amendment"). I do not take the fact that the statute acknowledges the parents' autonomy in choosing a surname for a child when the natural father has attested to his paternity to mean that the mother lacks the right independently to give her child any surname when the natural father does not attest to his paternity. See discussion in text, infra.
[2] This provision was also added to A.C.A. § 20-18-401 in 1995 pursuant to Acts 1995, No. 1254, § 16(f)(1).
[3] Pursuant to A.C.A. § 20-18-401(f)(3), upon such a judicial determination of paternity, "the name of the father and surname of the child shall be entered on the certificate of birth in accordance with the finding and order of the court." This statute does not mandate that the referenced "surname of the child" must be that of the newly acknowledged father. Reaves v. Herman,309 Ark. 370, 830 S.W.2d 860 (1992) (affirming the trial court's determination that a newly acknowledged father was not entitled to have his child's surname changed to his own).
[4] In this regard, I will note that this question would arise even if one narrowly read the term "parents" as used in A.C.A. §20-18-401(f)(2) as applying only to acknowledged parents — a reading to which I subscribe. As suggested in my text, given what I consider the Code's silence on the issue of an unwed mother's right to choose her child's surname when the father is unacknowledged, I feel obliged to address whether, as a matter of constitutional law, the statute's grant to the formally acknowledged parents of an out-of-wedlock child of an unfettered right together to name their child carries with it an implication that the mother alone will have a similar right if the father is unacknowledged.
[5] In support of this proposition, Thornton cited Stanley v.Illinois, 405 U.S. 645, 657 n. 9 (1972), in which the Supreme Court remarked that unwed fathers who demand hearings to dispute custody should "retain the burden of proving their fatherhood."Compare In the Matter of the Guardianship and Custody of Smith,
___ Misc. ___ B162XX/04 (N.Y. Fam. Ct. December 14, 2005) (requiring consent of putative father to adoption of children only upon his overcoming the presumption that the mother and her husband were the children's natural parents).
In some instances, the interests of putative fathers have been considered so insignificant by the courts that they are denied standing even to attempt to establish their paternity. For instance, under California law, a putative father may be denied altogether the opportunity to establish his paternity in order to avoid disrupting an existing marriage. See Michael H. v. GeraldD., 491 U.S. 110 (1989) (upholding the prohibition despite the fact that the putative father had an established relationship with the child); Lisa I. v. Superior Court, 133 Cal.App.4th 605
(2005) (holding that putative father who had essentially ignored child did not have liberty interest under the due process clause of the Constitution sufficient to allow him to establish paternity and seek name change for child).
[6] To date, the courts have not entertained any such challenge. In my opinion, a reviewing court faced with an unacknowledged father's statutory challenge to the mother's naming the child after him might well weigh the statutory proscription against the mother's constitutionally protected interest in giving her child any surname she wishes, concluding, as I have, (a) that the statute should not be read as proscribing such a choice of surname; and (b) that even if the statute were read as containing such a proscription, the mother's qualified constitutional prerogative to select any surname she wishes should prevail.
[7] Typically, the newly acknowledged father in such a case seeks to have the child's surname changed to his own. The case law is replete with such instances. See, e.g., cases discussed in Jay M. Zitter, Rights and Remedies Inter Se with Respect tothe Names of Their Children, 45 A.L.R. 5th 697 (2006); Beverley S. Seng, Like Father, Like Child: The Rights of Parents in TheirChildren's Surnames, 70 Va. L. Rev. 1303 (1984); Richard H. Thornton, Note, The Controversy Over Children's Surnames:Familial Autonomy, Equal Protection and the Child's BestInterests, 2 Utah L. Rev. 303 (1979); Note, Whose Interest IsControlling in the Name Change of Minors — the Father's, theMother's or the Child's?, 18 Ariz. L. Rev. 725 (1976). Perhaps the most interesting such dispute under Arkansas law was resolved in Shepard v. Speir, 85 Ark. App. 481, 157 S.W.3d 583 (2004), in which the Arkansas Court of Appeals affirmed a trial court's award of custody to the natural father of a child born out of wedlock and approved changing the child's entire birth name from Weather'By Dot Com Chanel Fourcast Sheppard to Samuel Charles Speir. The court recited the following standard as having guided its determination:
 Although there is no Arkansas case law that addresses the changing of a child's entire name, we are guided by our case law as it pertains to the changing of a child's surname. The best interest of the child is the dispositive consideration in determining whether a child's surname should be changed. Carter v. Reddell, 75 Ark. App. 8, 52 S.W.3d 506 (2001). Pursuant to Huffman v. Fisher, 337 Ark. 58, 987 S.W.2d 269 (1999) (Huffman I), in determining the child's best interest, the trial court should consider the following factors: (1) the child's preference; (2) the effect of the change of the child's surname on the preservation and development of the child's relationship with each parent; (3) the length of time the child has borne a given name; (4) the degree of community respect associated with the present and proposed surnames; (5) the difficulties, harassment, or embarrassment that the child may experience from bearing the present or proposed surname; (6) the existence of any parental misconduct or neglect. Id. at 68, 987 S.W.2d at 274. Where a full inquiry is made by the trial court regarding the implication of these factors and a determination is made with due regard to the best interest of the child, the trial court's decision will be upheld where it is not clearly erroneous.
Id. at 492.
Although rare, in some instances natural fathers whose paternity has been judicially determined have resisted the mothers' giving their children patronymic surnames. See, e.g., In the Interestof J.K., 922 S.W.2d 220 (Tex.App. 1996) (reversing the family court's decision, upon the father's request, to change a child's surname from Kirschberg to Maldonado); Application of Fisher,497 A.2d 907 (N.J.Super. L. 1985) (rejecting an unwed mother's request to change her child's surname to that of the natural father, who vigorously objected).
[8] Challenging the choice of name in such a case would be akin to seeking a remedy for a false-light invasion of privacy at common law. In Addington v. Wal-Mart Stores, Inc.,81 Ark. App. 441, 452-53. 105 S.W.3d 369 (2003), the court summarized as follows the elements of this particular tort:
 The right to recover for a false-light invasion-of-privacy claim is conditioned upon the complaining party's demonstrating that (1) the false light in which he was placed by the publicity would be highly offensive to a reasonable person, and (2) that the defendant had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the plaintiff would be placed. Dodrill v. Arkansas Democrat Co., 265 Ark. 628, 590 S.W.2d 840 (1979), cert. denied, 444 U.S. 1076 (1980). The evidence must support the conclusion that the publisher had serious doubts about the truth of his publication. Howard W. Brill, Arkansas Law of Damages § 33-11 at 671 (4th ed. 2002). In false-light actions, the plaintiff's burden of proof is governed by the clear-and-convincing-evidence standard. Dodrill, supra.
 Where the plaintiff is not a public figure and the publication is of matters of general or public concern, the plaintiff must prove actual malice by clear and convincing evidence. Dodson v. Dicker, 306 Ark. 108, 812 S.W.2d 97 (1991). Statements made with actual malice are those made with knowledge that the statements were false or with reckless disregard of whether they were false or not. Id.