**Michelle BRILL, et al., Plaintiffs,**

v.

**Kay HEDGES, et al., Defendants.**

**No. C–2–90–0701.**

United States District Court,
S.D. Ohio, E.D.

June 24, 1991.

Theodore Kern, Ohio State Legal Services Ass'n, Columbus, Ohio, Gary M. Smith, Southeastern Ohio Legal Services, New Philadelphia, Ohio, for plaintiffs.

Karin E. Wilson, Asst. Atty. Gen., State of Ohio Health and Human Services Section, Columbus, Ohio, Walter H. Chess, Jr., Asst. Pros. Atty., Zanesville, Ohio, for defendants.

## OPINION AND ORDER ON MOTIONS FOR SUMMARY JUDGMENT

KINNEARY, Senior District Judge.

This matter comes before the Court to consider the cross motions of the parties for summary judgment. Fed.R.Civ.P. 56.

## I. STATEMENT OF FACTS

The undisputed facts in this case are as follows. Plaintiff Michelle Brill was divorced from her husband on July 8, 1988. Because her attorney had informed her that returning to her maiden name (Wal-

ton) would be a difficult and expensive process, she retained Brill as her surname.

On December 19, 1989, Brill gave birth to a son whom she named Stephen James Walton. It is not disputed that Brill was not married at the time of conception, at the time of birth, or any time in between. It is also not disputed that Stephen is not the son of Brill's former husband.

After the birth of Stephen, Brill applied for and obtained a Social Security card for her son issued under the surname Walton. However, when she attempted to record the birth of her son with the Zanesville–Muskingum County Health Department, she was informed that Ohio law required her to record her child's birth under her own current surname. Ohio Revised Code section 3705.09(F) provides:

> If the mother of a child was married at the time of either conception or birth or between conception and birth, the child shall be registered in the surname designated by the mother. . . .
>
> If the mother was not married at the time of conception or birth or between conception and birth, the child shall be registered by the surname of the mother. The name of the father of such child shall also be inserted on the birth certificate if both the mother and the father sign the birth certificate as informants before the birth record is accepted for filing by the local registrar and in such a case the child may be registered by the surname of the father if the mother and father so designate. . . .

Michelle Brill and her son filed this action—later certified as a class action—to obtain a "declaration from this Court that she has a constitutionally protected right to choose her son's name, a declaration that Stephen James Walton has a constitutionally protected right to be known by a surname associated with his family, and an order from this Court requiring defendants to accept registration of Stephen's birth under the surname Walton." The plaintiffs also request that this Court declare section 3705.09(F) unconstitutional insofar as it restricts unmarried parents from choosing the surname under which they register their children, as it permits married parents to do.

## II. STANDARD OF REVIEW

In considering the parties' cross motions, the Court is mindful that summary judgment is appropriate only in limited circumstances. Rule 56(c) of the Federal Rules of Civil Procedure provides in pertinent part:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

The moving party bears the burden of establishing the absence of a genuine issue as to any material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). This burden may be met by establishing that despite sufficient opportunity for discovery, there exists no evidence to support an essential element of the non-movant's case. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir.1989) (citations omitted). Once the movant's burden is met, however, the non-moving party must present affirmative evidence in order to defeat a properly supported motion for summary judgment. *Anderson v. Liberty Lobby*, 477 U.S. 242, 257, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986). That is, the non-movant must adduce more than a scintilla of evidence in order to overcome the motion. *Street*, 886 F.2d at 1479. The respondent cannot rely upon the mere hope that the trier of fact will believe the non-movant's assertion of a disputed fact. *Id.*

The United States Supreme Court has held that the standard of summary judgment "mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a), which is that the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict." *Liberty Lobby*, 477 U.S. at 250, 106 S.Ct. at 2511. This is true where, for instance, the dispute

turns only on a legal question and the moving party must prevail as a matter of law even if the Court were to resolve all factual disputes in favor of the nonmoving party. *See Ross v. Franzen,* 777 F.2d 1216, 1222 (7th Cir.1985); 10A C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 225, at 79 (2d ed. 1983).

## III. DISCUSSION

 The question presented by the parties' cross motions is whether the statute's limitation on a parent's right to name his or her child is violative of due process, and whether the statute's differentiation between married and unmarried mothers is violative of equal protection. The answers depends, in part, on the level of scrutiny used by this Court in reviewing the statute. Thus, this Court must first determine whether a suspect classification is involved, or whether a fundamental right is at issue. While the answer to the former question is clearly negative,[1] the latter question is deserving of further inquiry.

Over the years, the Supreme Court has recognized in numerous instances that the Fourteenth Amendment's "liberty" interest includes a right to personal privacy that cannot be intruded upon by the government, at least in the absence of a compelling justification for the intrusion. *See, e.g., Zablocki v. Redhail,* 434 U.S. 374, 98 S.Ct. 673, 54 L.Ed.2d 618 (1978) (fundamental right to marriage); *Moore v. City of East Cleveland,* 431 U.S. 494, 97 S.Ct. 1932, 52 L.Ed.2d 531 (1977) (fundamental right to live with relatives); *Roe v. Wade,* 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973) (fundamental right to an abortion);

*Loving v. Virginia,* 388 U.S. 1, 87 S.Ct. 1817, 18 L.Ed.2d 1010 (1967) (fundamental right to interracial marriage).

As part of this liberty interest, the Supreme Court very early recognized the fundamental right of a parent to make child rearing decisions free from unwarranted governmental regulation. *See, e.g., Pierce v. Society of Sisters,* 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070 (1925) (fundamental right to send child to a non-public school); *Meyer v. Nebraska,* 262 U.S. 390, 43 S.Ct. 625, 67 L.Ed. 1042 (1923) (fundamental right to instruct a child in a foreign language). The right to make child rearing decisions, although fundamental, is not absolute. *See, e.g., Stanley v. Illinois,* 405 U.S. 645, 652, 92 S.Ct. 1208, 1213, 31 L.Ed.2d 551 (1972) (state has legitimate interest in separating neglectful parents from child); *Prince v. Massachusetts,* 321 U.S. 158, 166, 64 S.Ct. 438, 442, 88 L.Ed. 645 (1944) ("[N]either rights of religion nor rights of parenthood are beyond limitation"); *Jehovah's Witnesses v. King County Hospital,* 278 F.Supp. 488 (W.D.Wash. 1967) (three judge panel) (state may intervene in parents' religiously motivated decision refusing medically necessary blood transfusion for children), *aff'd,* 390 U.S. 598, 88 S.Ct. 1260, 20 L.Ed.2d 158 (1968) (per curiam).

 To determine whether a right not enumerated in the Constitution is "fundamental," and therefore deserving of special scrutiny by the judiciary, the Court must ask whether the right is "deeply rooted in this Nation's history and tradition." *Moore v. City of East Cleveland,* 431 U.S.

---

**1.** The plaintiffs argue that the statute creates a distinction between legitimate and illegitimate children, thereby requiring this Court to examine the statute under a middle level of scrutiny. This level of scrutiny, however, has been reserved for situations in which a statute *burdens* an illegitimate child. *See, e.g., Parham v. Hughes,* 441 U.S. 347, 352, 99 S.Ct. 1742, 1746, 60 L.Ed.2d 269 ("The Court has held on several occasions that state legislative classifications based upon illegitimacy ... violate the Equal Protection Clause. The basic rationale of these decisions is that it is unjust and ineffective for society to express its condemnation of procreation outside the marital relationship by *punish-*

*ing the illegitimate child* who is in no way responsible for his situation and is unable to change it.") (citation omitted) (emphasis added). Although the plaintiffs at various times argue that the newborn child has a constitutionally protected interest that is being denied by the Ohio statute, they never cite to any authority holding that a newborn child has an interest in having its mother give it a name. Furthermore, this Court can find no support for such a proposition. Thus, the only right involved in this case is the right of the parent to name a child, and the legitimate/illegitimate distinction is inapposite.

at 503, 97 S.Ct. at 1937–38. Federal courts should proceed cautiously in this area of law, ever mindful that the judiciary "is the most vulnerable and comes nearest to illegitimacy when it deals with judge-made constitutional law having little or no cognizable roots in the language or even the design of the Constitution." *Moore v. City of East Cleveland*, 431 U.S. 494, 544, 97 S.Ct. 1932, 1958, 52 L.Ed.2d 531 (White, J., dissenting). Upon review of the cases and literature in this area, the Court is of the opinion that, while a parent's right to name a child is an important aspect of child rearing and one that ought not be impinged upon by the government without reasonable justification, such interest is not so "deeply rooted in this Nation's history and tradition" as to be deserving of the highest scrutiny by this Court. No previous federal court has so held, and the Supreme Court's child rearing opinions do not warrant extension into this area.

Of the four federal courts that have looked at this issue in recent years, three invalidated the statute at hand, although none did so under the highest level of scrutiny. In *Jech v. Burch*, 466 F.Supp. 714 (D.Hawaii 1979), the district court considered a parent's challenge to a state statute requiring that legitimate newborn children be given either the father's surname or a hyphenated combination of both the mother's and father's surname. In *Jech*, the parents wished to name their child a surname which they themselves concocted from a combination of letters from both of their surnames.

In its opinion, the district court made it clear that the right to name a child was of great importance:

> In my opinion, a proper interpretation of Anglo–American political and legal history and precedent leads to the conclusion that parents have a common law right to give their child any name they wish, and that the Fourteenth Amendment protects this right from arbitrary state action.

466 F.Supp. at 719. However, it is also clear from the opinion that the court subjected the state statute to a low level of scrutiny, not the high level reserved for fundamental rights:

> I agree that the extent of the Constitutional protection to be applied here is as expressed by Mr. Justice McReynolds in *Meyer v. Nebraska, supra*, 262 U.S. at 399–400, 43 S.Ct. at 627, in striking down a state law which barred the teaching of foreign languages in private or public elementary schools within Nebraska. He wrote:
>
> > The established doctrine is that this liberty may not be interfered with, under the guise of protecting the public interest, by legislative action which is arbitrary or without reasonable relation to some purpose within the competency of the State to effect.

466 F.Supp. at 720. After a review of the state's asserted interests, the court struck down the statute as unconstitutional. 466 F.Supp. at 720.

In *O'Brien v. Tilson*, 523 F.Supp. 494 (E.D.N.C.1981), three married couples challenged the constitutionality of a state statute requiring that children born of married parents be given their father's surname. As in *Jech*, the court agreed with the parents that they had an important constitutional interest in naming their children:

> The Court has no difficulty in concluding that the statute does implicate important constitutional interests. It impinges upon decisions affecting family life, procreation, and child rearing; areas of human experience which the Supreme Court has long held must be accorded special protection. In this most private of realms, there is a "right to be let alone," a right to make decisions free of the coercive power of government. The invasion of privacy and individual expression here involved, contra to what defendants appear to suggest, is far from *de minimis* ...

523 F.Supp. at 496 (citations and footnote omitted). Like the court in *Jech*, however, the court in *O'Brien* decided the case under a low level of scrutiny, explicitly leaving the decision whether a fundamental right was involved for another day:

The Court need not decide whether the state must show a compelling state interest or some lesser interest to justify [the statute], because even under the most relaxed of standards, requiring only a showing that the statute can reasonably be viewed as promoting some legitimate state interest, the statute proves to be patently defective.

523 F.Supp. at 496.

Finally, in *Sydney v. Pingree*, 564 F.Supp. 412 (S.D.Fla.1982), the district court was faced with a statute similar to that in *O'Brien*, requiring that children conceived and born in wedlock be given their father's surname on the birth certificate. Once again, the court found an important constitutional interest at stake, but only reviewed the statute under the "arbitrary" standard:

Our first inquiry is whether the statute in question intrudes upon a constitutionally protected right of the plaintiffs. Following the reasoning of the United States Supreme Court in *Roe v. Wade*, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973), this court concludes that the due process clause of the Fourteenth Amendment protects the plaintiffs' right to choose the name of their child from arbitrary state action. The Court's decision in *Roe v. Wade* and other privacy cases holds that the liberty component of the due process clause of the Fourteenth Amendment encompasses a freedom of choice in certain matters of marriage and procreation. This constitutional right of liberty and privacy is broad enough to include the right of parents to choose a name for their child.

564 F.Supp. at 413 (citations omitted).

The Eighth Circuit is the only circuit court to have previously considered a similar issue. In *Henne v. Wright*, 904 F.2d 1208 (8th Cir.1990), the appellate court was confronted with two plaintiffs. The first, a married woman, claimed that because her newborn child was not the child of her husband, she wished to give the child the surname of the alleged natural father.[2]

The second, an unmarried woman, wished to give her newborn child the same surname she had given to her two previous children—a surname which had absolutely no relation to her surname, the father's surname, or to any of the three children, and was apparently chosen by the mother because she liked it. Despite the mothers' wishes, a Nebraska statute required that children of married mothers be given the mother's husband's surname, the surname of the mother, the maiden surname of the mother, or the hyphenated surname of both parents. The statute also required that children of unmarried mothers be given the surname of the mother, unless the father consents or is determined by a court to be the father. The district court found the statute to unconstitutionally impinge upon the mothers' right to name their children, *Henne v. Wright*, 711 F.Supp. 511 (D.Neb. 1989), but the Eighth Circuit reversed.

From the beginning, the appellate court in *Henne* made it clear that it was deciding a very narrow issue:

This case presents the issue whether a parent has a fundamental right to give a child a surname at birth with which the child has no legally established parental connection.... The district court overlooked this important distinction in characterizing the issue as whether parents generally possess a fundamental right to name a child. This case does not present that broad issue.

904 F.2d at 1213. While it is unclear to this Court what is intended by the phrase "legally established parental connection," it is interesting to note that the court in *Henne* described the Nebraska statute itself as requiring "that a child have some legally established parental connection to the surname entered on the birth certificate." 904 F.2d at 1208. At least for married women, the statute allowed newborn children to be given the maiden surname of the mother. Thus, apparently the *Henne* court would hold that, at least for married mothers, a newborn child has a legally established parental connection to

---

**2.** The mother wished to register her newborn child under the surname of the alleged father

without first obtaining a judicial determination of paternity.

the maiden name of the mother; this Court can find no reason to reach a different result in the case of unmarried mothers. The implication is that, while the decision in *Henne v. Wright* is informative, the court was explicitly *not* deciding the question at issue here, i.e., whether a parent has a fundamental right to give a child a surname at birth with which the child *has* a legally established parental connection.

Nevertheless, this Court agrees with the reasoning of the Eighth Circuit in *Henne* that, while parents have an important interest in naming their children, this interest does not rise to the level of a fundamental right. The *Henne* court's reasoning is most persuasive, even where the child has a legally established parental connection to the tendered surname:

> While *Meyer* and *Pierce* extended constitutional protection to parental decisions relating to child rearing, the parental rights recognized in those cases centered primarily around the training and education of children.... By contrast, the parental decision in this case relates to the choice of a child's surname. This subject possesses little, if any, inherent resemblance to the parental rights of training and education recognized by *Meyer* and *Pierce....* [W]e necessarily conclude that plaintiffs have presented no fundamental right.

904 F.2d at 1214. Unlike the three prior district court decisions, the appellate court in *Henne* upheld the state statute under the rational basis test. 904 F.2d at 1215.

■ Based upon the preceding analysis, it is the conclusion of this Court that because the claims made by Michelle Brill and her son do not involve important issues of education or training, and because the right of a mother to name her child has not previously been held to be fundamental, the statute must be reviewed under a standard considerably more deferential to the state than the strict scrutiny standard. Nevertheless, the state statute will not be upheld unless it bears some reasonable relationship to a legitimate state interest.

The state has briefly identified several interests which it alleges are served by requiring that the child of an unwed mother be given the surname of the mother. First, it claims that this requirement serves to ensure that there will be an identifiable legal connection between a child and his or her only legally identifiable parent. This is important, according to the state, not only for maintaining an efficient and effective record keeping system, but also for verifying and documenting the genetic relationship between mother and child.

Second, the state alleges that the system assists in maintaining the traceability of the ancestral chain. This, the state claims, may assist in future detection of genetic disease and defect.

Finally, the state maintains that the system promotes the preservation of family life. By requiring that an unmarried mother and her child maintain the same surname, the state claims that both mother and child are identifiably bound as a family by society.

In response, the plaintiffs point out that the state apparently fulfills these interests for married parents without restricting their choice of surnames, and that the state can do the same for unmarried mothers. Furthermore, the plaintiffs argue that by listing both parents' names on the birth certificate, the tracing of genetic relationships is easily accomplished. Finally, the plaintiffs point out that efficiency is not enhanced by the maintenance of two separate indexing systems—one for married parents and one for nonmarried parents—and that if the indexing of certificates for married parents under *any* name designated by the mother can be accomplished efficiently, then so can it be accomplished for unmarried parents.

While this Court finds the relationship between the statute and the state's alleged interests facially unreasonable, especially given the difference in treatment between married and unmarried mothers and the state's complete failure to even attempt to justify this disparity, it is impossible to grant summary judgment to either party based on the information contained in the cross motions and memoranda contra. Specifically, neither party has attempted to

provide this Court with more than conclusory allegations regarding the current indexing system and how section 3705.09(F) furthers the efficiency of the system and the traceability and documentation of genetic relationships. Given that the system allows the majority of births to be indexed under any name designated by the mother—including a name to which the child has absolutely no legally established parental connection—it is difficult to see how section 3705.09(F) furthers any of the interests identified by the state. Additionally, given that the mother's, and usually the father's, name appears on each birth certificate, it is difficult to understand why genetic or ancestral tracing is made more difficult in the situation where a mother and child have different surnames. However, without specific information regarding the structure of the indexing system and the manner in which the system is used for medical, genealogical, and other important research and tracing, it is impossible to say whether section 3705.09(F) is rationally related to those interests, or whether the state has merely created the interests in an attempt to justify an unjustifiable statute.

Furthermore, based upon the limited information contained in the parties' briefs, it is impossible for this Court to decide whether the statute is reasonably related to the preservation of family life. Given the statute's disparity in treatment between married and unmarried mothers, the Court is hesitant to accept the defendant's position, but a decision on this issue will not be forthcoming until the parties have had an opportunity to file additional briefs.

WHEREUPON, upon consideration and being duly advised, it is the opinion of this Court that the parties shall have twenty (20) days to rebrief the issue of whether section 3705.09(F) is reasonably related to any legitimate state interest. In formulating their positions, the parties are directed to make *specific* allegations regarding the structure, maintenance, and use of the state's indexing system, and to specifically address the state's interest in restricting *only* unmarried mothers in their choice of surnames for their children.

Additionally, it is the opinion of this Court that the defendants have correctly identified the appropriate standard of review to be used by this Court, and to that extent, the defendants' motion is hereby GRANTED, and the plaintiffs' motion is, to that extent, DENIED.

IT IS SO ORDERED.