ALICE M. BATCHELDER, Circuit Judge.
What’s in a name? that which we call a rose By any other name would smell as sweet; So Romeo would, were he not Romeo call’d, Retain that dear perfection which he owes Without that title. William Shakespeare, Romeo and Juliet, act 2, sc. 2.
What’s in a name? To Garrett Redmond, who desires to name his Thoroughbred race horse “Sally Hemings,” everything is in the name. When the Jockey Club, acting on behalf of the Kentucky Horse Racing Authority (KHRA), denied his request to register his horse under that name, Mr. Redmond protested and eventually filed a 42 U.S.C. § 1983 action in federal court, alleging a violation of his rights under the First, Fifth, and Fourteenth Amendments to the United States Constitution, and seeking both an injunction and money damages. Mr. Redmond also included a pendant state law claim, alleging that the state of Kentucky, through the KHRA, had impermissibly delegated legislative authority to the Jockey Club, in violation of Kentucky’s state constitution. The defendants moved to dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(6), and the district court granted the motion. We affirm the judgment, but dismiss on different grounds.
I.
We relate the facts as they appear in Mr. Redmond’s complaint and its attached exhibits. The Kentucky Horse Racing Authority (KHRA) is an independent state agency established by statute to “regulate the conduct of horse racing and pari-mutuel wagering on horse racing, and related activities within the Commonwealth of Kentucky.” Ky.Rev.Stat. Ann. § 230.225(1). It has broad power over horse racing activities, including the “full authority to prescribe necessary and reasonable administrative regulations and conditions under which horse racing at a horse race meeting shall be conducted.” Ky.Rev.Stat. Ann. § 230.260(3). One such regulation, pertinent to this case, is that “[n]o horse shall be entered or raced in this state unless duly registered and named in the registry office of the Jockey Club in New York.” 810 Ky. Admin. Regs. 1:012 (Sec.1).[1] No Kentucky statute or regulation contains any further statement regarding the naming.
The Jockey Club is the sole organization that registers and maintains records of Thoroughbred horses in the United States, Canada, and Puerto Rico. It is a New York-based organization, established in 1894 and offering membership by invi *665 tation only, whose principal function is maintaining The American Stud Book Principal Rules and Requirements, which includes the universally-accepted rules and requirements for naming Thoroughbred horses. Rule 6(A) states that “names will be assigned based upon availability and compliance with the naming rules as stated herein.” Rule 6(F) identifies classes of names that are not eligible for use, including:
Rule 6(F)(6): Names of persons, unless written permission to use their name is on file with the Jockey Club.
Rule 6(F)(7): Names of “famous” people no longer living, unless approval is granted by the Board of Stewards of the Jockey Club.
Rule 6(F)(8): Names of “notorious” people.
Rule 6(F)(13): Names that are suggestive or have a vulgar or obscene meaning; names considered in poor taste; or names that may be offensive to religious, political or ethnic groups.
Rule 6(G) gives the Jockey Club Registrar the absolute right to approve all name requests. Rule 20 provides the applicant the right to a hearing, upon payment of a $1,000 non-refundable fee.
When Mr. Redmond submitted the name “Sally Hemings” for his yearling filly in February 2004, the Jockey Club rejected it. A lengthy correspondence ensued, culminating in a telephone call in which the Jockey Club’s president, Alan Marzelli, informed Mr. Redmond that the name is “in poor taste and may be offensive to religious, political or ethnic groups.” Ultimately, Marzelli advised Mr. Redmond in writing that:
[T]he name ‘Sally Hemings’ is not eligible for use under Rule 6(F) of The Principal Rules and Requirements of The American Stud Book as the name is considered by this office to be in poor taste and a name that may be offensive to religious, political or ethnic groups (pursuant to Rule 6(F)(13)). Furthermore, and as you are aware, the name of a ‘famous’ person no longer living is not eligible under Rule 6(F)(7), unless approval is granted by the Board of Stewards of The Jockey Club.
Mr. Redmond appealed the decision to the Jockey Club Board of Stewards, objecting that it was arbitrary and unwarranted. The Board rejected Mr. Redmond’s arguments on appeal and concluded that the use of the name “may be offensive to persons of African descent and other ethnic groups, may be offensive to descendants of the specific people involved, may have negative historical implications, may have negative moral implications and may be degrading to ethnic groups and descendants of the people involved.” The Board also rejected the name based on the prohibition against using the names of “famous person[s] no longer living.”
In response, Mr. Redmond filed a seven-count complaint in federal court. The crux of Mr. Redmond’s complaint (which he repeated at least four times) is that:
But for The Jockey Club’s refusal to permit Mr. Redmond the use of the name ‘Sally Hemings’ the Filly would be eligible to race in Thoroughbred races in Kentucky. Without the approval of The Jockey Club as to a name for the Filly, Mr. Redmond cannot race or breed the Filly nor can he thereby be eligible to obtain any purse that she might win and is without the opportunity to earn a livelihood through racing and breeding the Filly. The value of the Filly is negatively impacted by the inability to enter her into a Thoroughbred race. Mr. Redmond has a liberty and property interest in his right to name, race and breed the Filly in Kentucky.
*666 Compl. at IIK 37-39 (emphasis added); also KK 49-51, 57-59, 67-68. Otherwise stated:
As a result of the KHRA’s actions to arbitrarily and capriciously deny Mr. Redmond the use of the name Sally Hemings and thereby refuse to permit Mr. Redmond to race the Filly in Thoroughbred horse races in the Commonwealth of Kentucky, Mr. Redmond has suffered, and will continue to suffer immediate and irreparable harm for which, absent injunctive relief, there is no adequate remedy at law.
Compl. at K 84 (emphasis added); also . K 81.
Thus, Mr. Redmond alleges that the Jockey Club (Counts 3 and 4 of his complaint) and the KHRA (Count 3) have violated the United States Constitution by denying his request to name and register his horse as “Sally Hemings,” and that the irreparable nature of the resulting harm necessitates injunctive relief (Counts 6 and 7). Mr. Redmond asserts that the right to any name of his choosing is protected by the First Amendment Free Speech Clause, the Fifth Amendment Takings Clause, and the Fourteenth Amendment Equal Protection and Due Process Clauses.
Mr. Redmond’s complaint also includes pendent state law claims alleging violations of Kentucky’s state constitution. He claims that the Jockey Club’s (and thereby KHRA’s) refusal to allow him to use the name “Sally Hemings” violates his due process, equal protection, and free speech rights under Sections 1, 2, 3, and 8 of the Kentucky Constitution (Count 2). He also claims that the KHRA’s delegation of authority to the Jockey Club violates Sections 2 and 29 of the Kentucky Constitution (Counts 1 and 5).[2]
The defendants, Jockey Club and KHRA, moved the district court to dismiss the complaint and the court granted their motion. The district court dismissed Count 1 based on the conclusion that it is not “an unconstitutional delegation of authority for The Jockey Club to engage in the registration of Thoroughbreds.” The court dismissed the remaining counts on the basis that the Jockey Club is not a state actor. Mr. Redmond appealed, contending that these decisions were in error.
II.
Mr. Redmond appeals the district court’s dismissal of his complaint for “failure state a claim upon which relief can be granted.” See Fed.R.Civ.P. 12(b)(6). On appeal, we conduct a de novo review of the 12(b)(6) motion, Marks v. Newcourt Credit Group, Inc., 342 F.3d 444, 451 (6th Cir. 2003), employing the same standard as the district court: “a court considering a motion to dismiss under Rule 12(b)(6) must accept all well-pleaded factual allegations of the complaint as true and construe the complaint in the light most favorable to the plaintiff.” Benzon v. Morgan Stanley Distrib., Inc., 420 F.3d 598, 605 (6th Cir.2005) (internal quotation marks and citations omitted). “Dismissal of the complaint is proper only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.” Id. (quotation marks and citations omitted). Because we agree that Mr. Redmond has failed to state a claim on which relief can be granted, we affirm the dis *667 missal, but we do so on different grounds than the district court because, in conducting our de novo review, we approach the analysis from a different direction.
The district court began by analyzing Mr. Redmond’s claim that Kentucky had made an unconstitutional delegation of power to the Jockey Club, in violation of Sections 2 and 29 of the Kentucky Constitution. After a thorough review, the court concluded that: no legislative power had been delegated; without such delegation, the Jockey Club was not a “state actor” for purposes of claims brought under § 1988 or the state or federal constitutions; and, without state action, all of Mr. Redmond’s claims for federal and state constitutional violations failed.[3]
We do not reach the question of whether Kentucky has delegated legislative authority to the Jockey Club in violation of its state constitution, or whether the Jockey Club’s naming requirements amount to “state action” for purposes of Mr. Redmond’s claims. Instead, we begin (and end) our analysis with our determination that, based on even our most liberal reading of his complaint, Mr. Redmond has not alleged facts that could demonstrate a violation of any right or interest protected under the United States Constitution. Accordingly, we conclude that “it is clear that no relief could be granted under any set of facts that could be proved consistent with [Mr. Redmond’s] allegations,” and dismissal is proper under Rule 12(b)(6). See Benzon, 420 F.3d at 605.
III.
“To state a claim under § 1983, a plaintiff must allege [1] the violation of [2] a right secured by the Constitution and laws of the United States, and must show [3] that the alleged violation was committed by a person acting under color of state law.” West v. Atkins, 487 U.S. 42, 48, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988); accord Mezibov v. Allen, 411 F.3d 712, 716-17 (6th Cir.2005). “If a plaintiff fails to make a showing on any essential element of a § 1983 claim, it must fail.” Redding v. St. Eward, 241 F.3d 530, 532 (6th Cir.2001). It is the second element — that the right at issue is secured by the Constitution and laws of the United States — that we find lacking in the present case.
As the passages from the complaint make evident, Mr. Redmond is claiming a fundamental right to select any name of his choosing, or more specifically, a constitutional right to name and register his horse as “Sally Hemings.” It is also evident from the complaint that neither KHRA nor the Jockey Club nor the rules and regulations Mr. Redmond cites in his complaint prevent Mr. Redmond from racing or breeding this horse, so long as the horse has a name that complies with the Jockey Club’s rules. Therefore, the harms alleged by Mr. Redmond in the complaint (e.g., the horse’s ineligibility to run as a Kentucky Thoroughbred, Mr. Redmond’s inability to earn a livelihood through racing and breeding the horse, and the horse’s diminished value) all derive from the denial of permission to use the name “Sally Hemings.” Consequently, we must assume that it is only by allowing Mr. Redmond to so name the horse that 'his injuries might be redressed.
Mr. Redmond contends that the right to register his horse under any name of his choosing is protected by the Free Speech *668 Clause of the First Amendment, the Takings Clause of the Fifth Amendment, and the Equal Protection and Due Process Clauses of the Fourteenth Amendment. Before proceeding to our individual consideration of each of these provisions, however, it is worthwhile to note that we have never recognized — nor have we found any authority that has ever recognized — a constitutional right to name a horse whatever one chooses, for any purpose whatsoever, let alone for the express purpose of registering the horse for competition. We can therefore say with some confidence that such a right would not be so securely established by the Constitution as to be considered “fundamental.” Cf., e.g., Powers v. Tiebauer, 939 So.2d 749, 753-54 (Miss.2005) (recognizing the unsettled debate as to whether a parent has a fundamental constitutional right to name his or her child) (citing cases). Compare Jech v. Burch, 466 F.Supp. 714, 719 (D.C.Haw. 1979) (“[P]arents have a common law right to give their child any name they wish, and [] the Fourteenth Amendment protects this right from arbitrary state action.”), unth Brill v. Hedges, 783 F.Supp. 333, 339 (S.D.Ohio 1991) (citing Henne v. Wright, 904 F.2d 1208, 1214 (8th Cir.1990)) (“[W]hile parents have an important interest in naming their children, this interest does not rise to the level of a fundamental right.”). If there is no unambiguous right for parents to bestow a name of their choosing upon their son or daughter, we have considerable doubt as to whether there is such a right for a horse owner to bestow a name of his choosing on his horse.
To be sure, the First Amendment protects horse owners’ rights to free speech, and we do not foreclose Mr. Redmond indiscriminately from asserting that right, but the right to free speech is not absolute in all contexts. See, e.g., Texas v. Johnson, 491 U.S. 397, 430, 109 S.Ct. 2533, 105 L.Ed.2d 342 (1989); United Public Workers v. Mitchell, 330 U.S. 75, 95, 67 S.Ct. 556, 91 L.Ed. 754 (1947). The present context — that of the Jockey Club Thoroughbred naming registry[4] — is at most a “limited public forum.” See Rosenberger v. Rector & Visitors of Univ. of Va., 515 U.S. 819, 829, 115 S.Ct. 2510, 132 L.Ed.2d 700 (1995). In such a limited public forum, the state may constitutionally restrict speech, so long as it does “not discriminate against speech on the basis of viewpoint,” and the restriction is “reasonable in light of the purpose served by the forum.” Good News Club v. Milford Cent. Sch., 533 U.S. 98, 106-07, 121 S.Ct. 2093, 150 L.Ed.2d 151 (2001).
In the present case, the purposes served by the forum (i.e., the Jockey Club registry) include — as set out in the Principal Rules and Requirements and quoted in the complaint — ensuring that the registered names are not those of living persons, names of famous people no longer living, names of notorious people, or “names that are suggestive or have a vulgar or obscene meaning; names considered in poor taste; or names that may be offensive to religious, political or ethnic groups.” Thus, the restriction on the name “Sally Hemings” is reasonable in light of the purpose served by the forum and it does not discriminate on the basis of viewpoint. See Good News Club, 533 U.S. at 106-07,121 S.Ct. 2093. We conclude, as a matter of law, that Mr. Redmond cannot prove any facts consistent with the allegations in his complaint that would state a First Amendment claim. Let us empha *669 size, however, that this holding does not preclude — on a different record — the possibility of a plaintiff raising a viable First Amendment claim based on a state regulator’s disallowance of a horse name.
The Takings Clause of the Fifth Amendment “provides that private property shall not be taken for public use, without just compensation; but it does not purport to define property rights.” Georgia v. Randolph, 547 U.S. 103, 126 S.Ct. 1515, 1540, 164 L.Ed.2d 208 (2006) (Scalia, J., dissenting) (citations omitted). The Supreme Court has “consistently held that the existence of a property interest is determined by reference to existing rules or understandings that stem from an independent source such as state law.” Id. (quotations omitted). To establish a property interest in a particular benefit, such as a name, the plaintiff must have a “legitimate claim of entitlement to it.” Board of Regents v. Roth, 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). “[A]n abstract need or desire for it or a unilateral expectation is insufficient.” LRL Props. v. Portage Metro Hous. Auth., 55 F.3d 1097, 1108 (6th Cir.1995).
Mr. Redmond claims a property interest in the horse itself, but he has not alleged and cannot allege that the defendants have deprived him of his horse or the use of his horse. Instead, Mr. Redmond asserts that they have deprived him of the use of the name, but Mr. Redmond has not pleaded any facts that would demonstrate that he has any legitimate claim to the name. At most, Mr. Redmond claims an abstract desire or unilateral expectation that the descendant of “Jefferson’s Secret” and “A Colonial Affair” should race under the provocative name of “Sally Hemings.” This is insufficient as a matter of law to state a property interest in that particular name, and therefore, Mr. Redmond can state no actionable Fifth Amendment claim consistent with the facts he has alleged.
Generally speaking, “[t]he Equal Protection Clause prohibits state and local governments from treating similarly situated persons differently.” Rector v. Denver, 348 F.3d 935, 949 (10th Cir.2003) (citing City of Cleburne v. Cleburne Living Ctr., Inc., 473 U.S. 432, 439-41, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985)). “Unless a suspect class or fundamental right is implicated, a government’s classification need only be rationally related to a legitimate government interest.” Id. (citing Nordlinger v. Hahn, 505 U.S. 1, 10, 112 S.Ct. 2326, 120 L.Ed.2d 1 (1992)). “When social or economic legislation is at issue, the Equal Protection Clause allows the States wide latitude, and the Constitution presumes that even improvident decisions will eventually be rectified by the democratic processes.” City of Cleburne, 473 U.S. at 440, 105 S.Ct. 3249.
Mr. Redmond protests that the Jockey Club’s “denial of Mr. Redmond’s right to use the name ‘Sally Hemings’ treats him differently and unfairly as compared to other Thoroughbred horse owners in Kentucky without rational basis.” (Compl.1l 72). Despite this protest, however, we find that he has alleged no facts that might support an argument that the Jockey Club’s regulations and rules, of which he complains, or the actions taken pursuant to them, are not rationally related to a legitimate state interest, namely, the regulation of Thoroughbred racing in Kentucky. See Rector, 348 F.3d at 949. Accordingly, we conclude that his complaint is insufficient as a matter of law to state an actionable Equal Protection claim, based on the facts as alleged.
“The Due Process Clause guarantees more than fair process, and the ‘liberty’ it protects includes more than the ab *670 sence of physical restraint. The Clause also provides heightened protection against government interference with certain fundamental rights and liberty interests.” Washington v. Glueksberg, 521 U.S. 702, 719-20, 117 S.Ct. 2258, 138 L.Ed.2d 772 (1997). A liberty interest is “an interest traditionally protected by our society ... so rooted in the traditions and conscience of our people as to be ranked as fundamental.” Michael H. v. Gerald D., 491 U.S. 110, 122, 109 S.Ct. 2333, 105 L.Ed.2d 91 (1989) (plurality) (quoting Snyder v. Massachusetts, 291 U.S. 97, 105, 54 S.Ct. 330, 78 L.Ed. 674 (1934)). As we explained at the outset of this analysis, we have never recognized — nor have we found any authority that has ever recognized — a constitutional right to name a horse whatever one chooses, and we are confident that Mr. Redmond’s interest in bestowing his horse with a provocative name is not “so rooted in the traditions and conscience of our people as to be ranked as fundamental.” See id. Therefore, Mr. Redmond has not pled facts that would state a liberty interest or a fundamental right to the particular, provocative name of “Sally Hemings,” and Mr. Redmond has no actionable Due Process claim.
In short, because he has spent three years insisting that he has a constitutional right to name his horse “Sally Hemings” and that no other name will do, Mr. Redmond now finds himself, like the songster of the '70s, having “been through the desert on a horse with no name.”[5] If he really wants to race or breed this horse in Kentucky, Mr. Redmond will have to come up with a name that complies with the Jockey Club’s rules.[6] A quick look at the Jockey Club’s Registry confirms that “Horse With No Name” is no longer available.[7]
IV.
For the foregoing reasons, we AFFIRM the judgment of the district court.

. This provision also contains an exception to the requirement that horses must be registered and named in the Jockey Club registry, stating: "except, however, the stewards may for good cause, in their discretion, waive this requirement if the horse is otherwise correctly identified to the stewards’ satisfaction.” 810 Ky. Admin. Regs. 1:012 (Sec.l). This exception is not at issue in the present case, however, as Mr. Redmond’s complaint does not claim that he has ever, at any time during his extensive communications, requested the KHRA stewards to waive the requirement.

. Based on the outcome of our analysis — from which we conclude that Mr. Redmond has failed to state a federal claim, and therefore grant the motion to dismiss the federal claims — we will exercise our discretion to deny supplemental jurisdiction over the pendent state law claims. See Arbaugh v. Y & H Corp., 546 U.S. 500, 126 S.Ct. 1235, 1244-45, 163 L.Ed.2d 1097 (2006). Therefore, we find that we need not consider the state law claims on the merits.

. Because Mr. Redmond’s remaining state law issues could only be heard under the federal court's pendent jurisdiction, the district court did not err in dismissing these claims after determining that the federal claims could not survive the motion to dismiss. See note 2, supra (citing Arbaugh, 126 S.Ct. at 1244-45).

. We will assume for purposes of this analysis that the Jockey Club, acting under the grant of authority by the KHRA by formal regulation, is a state actor, acting under the color of state law.

. Dewey Bunnell, A Horse -with No Name, on AMERICA (Warner Brothers 1972).

. We note from outside the present record that Mr. Redmond's four-year-old filly made her racing debut on July 1, 2007, under the temporary name "Awaiting Justice,” finishing fifth in a nine-horse field. See Churchill Downs Race Results, available at http://www. churchilldowns.com (last visited July 27, 2007); see also Jennie Rees, Filly’s Name is Some Affair, Louisville (KY) Courier-Journal, June 30, 2007, available at http://www. courier-joumal.com (quoting Mr. Redmond as saying the name is "strictly temporary”) (last visited July 27, 2007). Of course, the term "awaiting justice," being a temporary condition, would appear by its own implication to be necessarily temporary when used as a name.

. See The Jockey Club Registry, Online Names Book, available at http://www.registry. jockeyclub.com/ registry, cfm (last visited July 27, 2007).